UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELVIN HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-02945-SEB-MPB |
| | ) |
| LUNSFORD Sgt., | ) |
| STRANGER Officer, | ) |
| DUSHAN ZATECKY Superintendent, | ) |
| HAMMOND Officer, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PARTIAL MOTION TO DISMISS (DKT. 70) AND MOTION FOR SUMMARY JUDGMENT (DKT. 73)**

Plaintiff Melvin Hall ("Hall"), a prisoner in the Indiana prison system, sued Defendants Dushan Zatecky ("Zatecky"), Boyd Lunsford ("Lunsford"), Eric Hammond ("Hammond"), and Amanda Stranger ("Stranger")—all employees of the Indiana Department of Correction (DOC)—for violations of the Eighth Amendment to the Constitution under 42 U.S.C. § 1983 and state-law torts.

Now before the Court are Defendants' partial motion to dismiss the state-law claims, Dkt. 70, and motion for summary judgment on all claims. Dkt. 73. For the reasons given below, the motion for summary judgment is granted. Though that is sufficient to dispose of the case, we also grant in part and deny in part the partial motion to dismiss to clarify the relief to which Defendants are entitled.

1

## Background

The operative complaint, Dkt. 65, alleges the following. Hall is an epileptic. On April 13, 2017, Hall had a seizure in the prison dormitory; three prison guards—Lunsford, Hammond, and Stranger—were summoned in response. Hall was handcuffed and placed on a spinal backboard for transportation to the prison infirmary. *En route*, Hammond shot Hall with a taser as Lunsford and Stranger watched. (Hammond later reported that he drive-stunned, rather than shot, Hall with the taser, a technique used to achieve "pain compliance" rather than neuromuscular incapacitation. *Dockery v. Blackburn*, 911 F.3d 458, 462 (7th Cir. 2018).) "In an effort to hide his own misconduct," Hammond falsely reported to his superiors that Hall had told him he had earlier taken drugs, though a later drug test showed none in his system. Compl. ¶ 29. As a result of Hammond's false report, Hall was assigned a less favorable or more restrictive status in the prison's prisoner-classification system.

Zatecky, the complaint alleges further, is the prison warden. Zatecky failed to train the prison guards on how to recognize and respond to seizing inmates. Further, Zatecky failed to provide notice of Hall's epilepsy "on the unit" (Hall's meaning here is somewhat unclear) and otherwise failed to make the prison guards aware of Hall's epilepsy. *Id.* ¶ 42.

As to what Hall did to complain of this incident before coming to court, the parties' evidentiary designations reveal the following. On April 13, 2017, a few hours after tasering Hall, Lunsford, Stranger, and Hammond reported to their superiors that Hall had "attempted to grab [Stranger's] fingers," Dkt. 78, at 5, or "grabbed [Stranger's] hand attempting to cause harm." *Id.* at 6. We infer that these reports resulted in a finding

2

by the prison that Hall had committed assault or battery on Stranger, though how, when, or by whom that finding was made does not appear in the record.

On May 5, 2017, Hall filled out an "Offender Complaint—Informal Process Level," State Form 52897, in accordance with the prison's grievance policy. *See* Dkt. 60 Ex. 1, at 8–9. His grievance is here reproduced in its entirety:

> I have a problem with me being found guilty for assault, something I have no control over. I was having 3 seizures when a officer said I grab they hand doing the incident. When I have seizures I blackout and can't control anything that's happening. I think its unfair for me to be disiplined for a illness I have which is in my medical file. With my conditions I think I deserve my visits and so forth.

Dkt. 60 Ex. 1, at 36 (*sic passim*).

Hall's grievance was received by the prison's administration on May 8, 2017. The same day, Hall received a "Return of Grievance," State Form 45475, signed by "Robert Stafford, Grievance Specialist." *Id.* at 35. *Also* Stafford Decl. (Dkt. 75 Ex. 1) ¶¶ 21–22. The return stated, "The attached grievance has been rejected and is being returned to you because it does not comply in one or more ways with . . . the adult offender grievance procedure." Dkt. 60 Ex. 1, at 35. As reasons for the rejection, the return stated, "Your complaint concerns a Classification or Disciplinary Hearing issue or action. These types of issues or actions are to be appealed through their own appeal process and not through the grievance process." *Id.* And further: "Other: DHB Matter." *Id.* (It is never explained what "DHB" stands for.)

As instructed, Hall pursued the disciplinary appeals process, though any submissions he may have made to the prison in this connection are not now in the record.

It does appear from the record that Hall's appeal was successful. On June 6, 2017, an assistant superintendent at the prison "grant[ed] [Hall's] appeal" and set aside the discipline the prison had imposed on Hall for having been "found guilty" of "[a]ssault/battery upon another person . . . ." Dkt. 80 Ex. 2, at 1.

No other grievance filed by Hall with the prison appears in the record. But, on May 29, 2017, a week before Hall won relief through the disciplinary appeals process, Hall wrote an e-mail to the DOC ombudsman. The e-mail is here reproduced in its entirety, capitalization regularized:

> I have a small issue about a write up that was unfair. I was at the OSD Level One facility and got wrote up for having a seizure. Iwas on the phone when I first had one then had two more on my way to the infirmary. The writeup was for assault which I had no control over because I was having a seizure. Then they tazed twice which made me have another seizure that I could of died from. They thirty days from me and my commissary/phone restriction as well. I put in a appeal and still haved heard nothing and I'm trying to fix this whole situation. These types of seizures are known to every facility I been to and thats why I take medication to prevent these type of things from happening. So is there any thing you can do to help me because I feel like I shouldn't of got disciplined for having a seizure bad enough they made it worst by tazing me. I haven't heard nothing and really don't known how to go about this so is there aunything you can do to help me please.

Dkt. 80 Ex. 3, at 2 (*sic passim*). One June 9, 2017, the ombudsman replied by letter, advising Hall that he should first exhaust the prison's internal appeals process. Dkt. 80 Ex. 4. The ombudsman further advised Hall that, having done so, if he "still fe[lt] that a violation of DOC policy and procedure ha[d] occurred," Hall should reapply to the

ombudsman for relief. *Id.* at 1. No further communications by Hall on the events of April 13, 2017, appear in the record.

This lawsuit was filed by Hall *pro se* on August 25, 2017. Dkt. 1. Hall obtained counsel shortly thereafter. Dkt. 9. On November 6, 2017, Hall by counsel mailed a "Notice of Tort Claim" to the commissioner of DOC, the governor, the Indiana Department of Insurance, and the attorney general, outlining Hall's state-law tort claims. Dkt. 75 Ex. 5-A, at 1. The notice was supplemented by further letter on November 11, 2017. Dkt. 75 Ex. 5-B, at 1.

The complaint alleges the state-law torts of battery, defamation, failure to protect, and negligence. Compl. ¶¶ 64–69. The instant partial motion to dismiss contends that all Defendants are immune to those claims under the individual-immunity provision of the Indiana Tort Claims Act (ITCA), which generally bars suits against individual state employees for acts within the scope of their employment. Ind. Code § 34-13-3-5(b). Hall concedes he has failed to state a claim against Zatecky under the doctrine of *respondeat superior* but contends his remaining claims fall outside the immunity under Indiana Code § 34-13-3-5(c).

In addition to the state-law claims, the complaint also alleges use of excessive force in violation of the Eighth Amendment. Compl. ¶¶ 61–63. The instant motion for summary judgment contends that no claims alleged in the complaint can be maintained for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA)—codified in relevant part at 42 U.S.C. § 1997e(a)— and state law. The motion contends further that Hall failed to give notice of his state-law tort claims before filing

5

suit as required by the notice provision of the ITCA. Those claims are therefore barred as well. *See* Ind. Code §§ 34-13-3-6, 13. (The ITCA cannot operate to bar federal claims raised under 42 U.S.C. § 1983, and Defendants do not contend otherwise. *See SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 682 (7th Cir. 2010) (discussing *Felder v. Casey*, 487 U.S. 131 (1988)). Hall responds, as to exhaustion, that there was no available and effective remedy for him to exhaust, and, as to notice, that his May 29, 2017, e-mail to the DOC ombudsman satisfies the requirement.

## Analysis

We first take up Defendants' motion for summary judgment. We conclude that Defendants are entitled to dismissal without prejudice of Hall's federal claims. Finding relinquishment of jurisdiction of the state-law claims to be inappropriate, we conclude next that Defendants are entitled to dismissal without prejudice of those claims as well. The sole remaining question then is whether Defendants' partial motion to dismiss entitles them to dismissal with prejudice of Hall's state-law claims. Excepting Zatecky, we conclude that the remaining Defendants are not entitled to that relief. We thus dismiss the action in its entirety without prejudice.

**I.     Motion for Summary Judgment**

Summary judgment is appropriate where there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The application of this standard varies with the burden of proof. This is a fundamental point that appears to have escaped Defendants, who have not articulated the standard correctly.

As a matter of federal law, failure to exhaust administrative remedies is an affirmative defense on which Defendants bear the burden of proof. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016) (citing *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). So too under Indiana law. *Alkhalidi v. Ind. Dep't of Corr.*, 42 N.E.3d 562, 565–66 (Ind. Ct. App. 2015) (citing *First Am. Title Ins. Co. v. Robertson*, 757, 760 (Ind. 2014), *amended in nonrelevant part*, 27 N.E.3d 768 (Ind. 2015); *Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006)) (rejecting Defendants' jurisdictional characterization). Where the movant seeks judgment on a claim or defense on which it would bear the burden of proof at trial, the movant

> must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. If the movant has failed to make this initial showing, the court is obligated to deny the motion.

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted). Under these circumstances, the movant may *not* rely on the nonmovant's purported failure to establish an element of his case (which is a negative defense, not an affirmative one). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The exhaustion issue is determined by the Court. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). If the issue is not resolved on motion, it is determined following a fact-finding hearing under *Pavey*. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).

The defense of failure to comply with the ITCA's notice requirement is treated somewhat differently. "[W]hen a plaintiff fails to give the required notice, the defendant has an affirmative defense which must be raised in a responsive pleading to the plaintiff's complaint." *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) (citing *Thompson v. City of Aurora*, 325 N.E.2d 839, 843 (Ind. 1975)). But "[o]nce the defendant raises failure to comply . . . , the burden shifts to the plaintiff to prove compliance." *Id.* (citing *Thompson*, 325 N.E.2d at 843). Because, under this formulation, the plaintiff bears the ultimate burden of proof, it is appropriate to treat ITCA compliance, once fairly raised by the defendant, as an element of the plaintiff's claim. *See Celotex*, 477 U.S. at 322–23. Accordingly, once Defendants have discharged the "initial responsibility" of informing the Court of the basis for its Rule 56 motion on this issue, *id.* at 323, Hall must come forward with evidence that would permit a finding in his favor. *Id.* at 322–23.

Like exhaustion, the issue of ITCA compliance is determined by the Court. *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989). If the issue is not resolved on motion, a *Pavey*-style hearing is in order. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 653–54 (7th Cir. 2003).

### A.    *PLRA Exhaustion*

"The PLRA provides that '[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted.'" *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (quoting 42 U.S.C. § 1997e(a)). As to procedure,

> Section 1997e(a) requires "proper exhaustion"; that is, the inmate must file a timely grievance utilizing the procedures and rules of the . . . prison['s] grievance process. *See Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006); *see also* [*Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005)]. The "applicable procedural rules" that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself. [*Jones v. Bock*, 549 U.S. 199, 218 (2007)]. We have taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Thus, "[a] prisoner must properly use the prison's grievance process. If he . . . fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Id.*

*Id.* at 720–21 (fourth alteration in original).

As to substance, where a grievance is procedurally compliant or where prison officials disregard a grievance's procedural shortcomings in favor of addressing its merits, if the grievance by its contents "has served its function of alerting the state and inviting corrective action" by "providing prison officials a fair opportunity to address [the prisoner's] complaint[,]" the defense of failure-to-exhaust is unavailable. *Id.* at 722 (citing *Conyers*, 416 F.3d at 585; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)).

Here, there is no dispute over Hall's compliance with the prison's grievance procedures. Defendants point rather to the substance of the grievance Hall filed on May 5, 2017, as being insufficient to provide prison officials a fair opportunity to address the complaints Hall is pursuing in this Court. We agree. Hall's May 5, 2017, grievance made perfectly clear what he was complaining about—"I have a problem with me being found

9

guilty for assault, something I have no control over." Dkt. 60 Ex. 1, at 36—and it was not Defendants' use of excessive force.

Hall does not disagree. Rather, he argues that two facts made the prison's grievance process unavailable to him. "The PLRA does not . . . demand the impossible. Remedies that are genuinely unavailable or nonexistent need not be exhausted. A remedy becomes unavailable 'if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (quoting *Dole*, 438 F.3d at 809).

Hall argues first that his May 5, 2017, grievance "was never denied." Br. Opp. (Dkt. 80) 1. It is true that prison defendants will not be heard to raise failure-to-exhaust after allowing the plaintiff's grievance to languish unaddressed. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). But it is beyond genuine dispute that that is not what happened here. Rather, Hall's grievance was "rejected" and returned to him within three days for reasons clearly (and, as it seems, accurately) stated on the return. Dkt. 60 Ex. 1, at 35.

Hall argues second that, under the prison's grievance policy, "Tort Claims" (capitalized as a proper noun) are not grievable. Dkt. 60 Ex. 1, at 11. "An offender who is instructed not to complain about torts through the grievance process should not be punished for following that instruction[,]" argues Hall. Br. Opp. 2. That argument is not without merit. Likely that is why Defendants have simply ignored it in their reply brief. *See* Reply Br. (Dkt. 88) ¶ 2. It does not quite carry the day for Hall, however.

Concededly the prison's policy is not pellucid. But it unambiguously permits inmates to grieve any "incident . . . [that] affects them personally and impacts the conditions of their confinement[,]" specifically identifying "[a]ctions of individual staff, contractors or volunteers" as a grievable issue. Dkt. 60 Ex. 1, at 11. And a subsequent reference in the policy to "Tort Claims" (as above, capitalized as a proper noun) confirms that "Tort Claims" means "claims submitted under the ITCA," *see id.* at 15, not "complaints about conduct which may have been tortious."

In sum, Hall did not exhaust his available administrative remedies under the PLRA before filing suit under 42 U.S.C. § 1983. Hall's federal claims are accordingly barred and must be dismissed. "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (emphasis omitted). This is so no matter whether there remain unexhausted administrative remedies available to the plaintiff. *See Hill v. Snyder*, 817 F.3d 1037, 1039–40 (7th Cir. 2016); *Maddox*, 655 F.3d at 716.

B. *Retention of Jurisdiction*

The state-law claims are here under our supplemental jurisdiction. Compl. ¶ 4. *See* 28 U.S.C. § 1367. "When the federal claim[s] in a case drop[] out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim[s] to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993)). The presumption may be overcome where

11

> "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; . . . "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or . . . "when it is absolutely clear how the pendent claims can be decided."

*Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Assoc'd Ins. Co.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

Here, judicial resources have already been committed in discovery relating to the exhaustion and ITCA notice issues, and, as explained below, it is absolutely clear that Hall failed to satisfy the ITCA. Accordingly, we retain jurisdiction over the state-law claims.

    C.    *State-Law Exhaustion*

Under Indiana law, "[a] claimant who has an available administrative remedy must pursue that remedy before being allowed to access the courts." *Higgason v. Lemmon*, 818 N.E.2d 500, 503 (citing *Boatwright v. Celebration Fireworks, Inc.*, 810 N.E.2d 766 (Ind. Ct. App. 2004). The contours of Indiana's exhaustion doctrine do not differ greatly from those of the federal doctrine discussed immediately above, *see id.* at 503–04, and mandate dismissal without prejudice for the same reasons. *See Johnson Oil Co. v. Area Plan Comm'n*, 715 N.E.2d 1011, 1013 (Ind. Ct. App. 1999).

It is true that the state doctrine is in some respects more plaintiff-friendly than the federal doctrine, for example by permitting futility of exhaustion to excuse failure to exhaust under certain circumstances. *Compare Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) (citing *Booth v. Churner*, 532 U.S. 731 (2001)), *with*

*Higgason*, 818 N.E.2d at 504 (citing *Abner v. Ind. Dep't of Health ex rel. Ind. Soldiers & Sailors Children's Home*, 777 N.E.2d 778, 783 (Ind. Ct. App. 2002)). But Hall has not even separately addressed state-law exhaustion in his brief, *see* Br. Opp. 1–2, and in any event the ITCA's notice requirement independently defeats his state-law claims, as we now explain.

D. *ITCA Notice Requirement*

As Judge Dillin once put it evocatively, an Indiana governmental entity, "basking in the State's sovereign immunity, has had set for it the terms upon which it is sued under state law, even in federal court." *Baker v. Schafer*, 922 F. Supp. 171, 172 (S.D. Ind. 1996). The ITCA provides, "[A] claim against the state [including its agencies, *see* Ind. Code § 34-6-2-140(1)] is barred unless notice is filed with the attorney general or the state agency involved [here, DOC, *see* Ind. Code § 34-6-2-141] within two hundred seventy . . . days after the loss occurs." Ind. Code § 34-13-3-6(a). The notice must

> describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

*Id.* § 10. The state must approve or deny the claim within ninety days. *Id.* § 11. "A person may not initiate a suit against a governmental entity [including the state and its agencies, *see* Ind. Code § 34-6-2-49(a)] unless the person's claim has been denied in whole or in part[,]" Ind. Code § 34-13-3-13, a requirement which applies as well to claims against a governmental entity's employees. *Poole v. Clase*, 476 N.E.2d 828, 830 (Ind. 1985).

13

Here, Hall does not (as he could not) dispute that he failed to serve the attorney general or DOC with notice conforming to the requirements of Section 10, Ind. Code ch. 34-13-3, before bringing this lawsuit. Instead, Hall seeks shelter under the doctrine of substantial compliance by way of his May 29, 2017, e-mail to the DOC ombudsman.

"The substantial compliance doctrine exists to avoid overly harsh results where the content of a timely filed written notice does not meet every jot and tittle of the form requirements of the statutory notice under [Section 10]." *Robinson v. Leonard-Dent*, No. 3:12CV417-PPS, 2013 WL 5701067, at *11 (N.D. Ind. Oct. 18, 2013) (emphasis omitted) (citing *Lyons v. Richmond Cmty. Sch. Corp.*, 990 N.E.2d 470, 482 (Ind. Ct. App. 2013), *aff'd in relevant part*, 19 N.E.3d 254, 260 (Ind. 2014)). "What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination." *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989).

In this case, however, the determination is sensitive to only one fact: namely, that Hall's May 29, 2017, e-mail to the DOC ombudsman contained not even the most oblique suggestion that he intended to sue DOC or its employees. That is fatal to Hall's state-law claims.

To substantially comply with the ITCA, a putative claimant is "requir[ed] . . . to announce his intention to assert a claim[.]" *Ind. St. Hwy. Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988). "[N]otifying the [governmental entity] of an intent to take legal action" is "the threshold requirement" for substantial compliance. *Collier*, 544 N.E.2d at 499. "[W]here a plaintiff, within the [statutory] period, fails to file any notice of an intent to make a claim, actual knowledge of the occurrence on the part of the [governmental

entity], even when coupled with an investigation of the occurrence, will not suffice to prove substantial compliance." *Id.* (citing *Geyer v. City of Logansport*, 370 N.E.2d 333 (Ind. 1977)). "[A]n ordinary complaint letter that d[oes] not state an intent to file a claim" does not substantially comply with the ITCA. *Id.* (citing *City of Indianapolis v. Satz*, 377 N.E.2d 623 (1978)).

Hall's e-mail to the DOC ombudsman exclusively concerned the unfairness of the prison's holding him liable for his involuntary conduct. It made no mention that any lawsuit was in the offing. The e-mail did give some actual notice of the facts underlying Hall's complaint. Accordingly, Hall argues that his e-mail gave DOC an opportunity to investigate his claims; and he notes that the prison actually performed such an investigation. However, as just noted, proof of actual knowledge of the facts on the part of the governmental entity, "even when coupled with an investigation," does not make out substantial compliance. *Id.*

Hall did not substantially comply with the ITCA's notice requirement before filing suit. Hall's state-law tort claims are accordingly barred and must be dismissed. Where, as here, a plaintiff files suit before serving notice under the ITCA but serves such notice before the expiration of statutory period (here, 270 days, Ind. Code § 34-13-3-6(a)), the claim is not "lost" but "merely . . . premature[]." *Bradley v. Eagle Union Cmty. Sch. Corp. Bd. of Sch. Trs.*, 647 N.E.2d 672, 676 (Ind. Ct. App. 1995). Accordingly, dismissal under such circumstances is without prejudice. *Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864, 869–70 (Ind. Ct. App. 1999) (citing *Bradley*, 647 N.E.2d at 676). *See also E.B. v. Gary Cmty. Sch. Corp.*, No. 2:09-CV-143, 2009 WL 10692472, at *4–*5 (citing *Orem*,

711 N.E.2d at 869–70) ("err[ing] on the side of caution" and dismissing without prejudice where plaintiffs served ITCA notice outside statutory period after filing suit).

## IV. Partial Motion to Dismiss

Though Defendants' motion for summary judgment entitles them to dismissal without prejudice as explained above, they may yet convert that dismissal to one with prejudice as to the state-law claims if they are successful in showing their immunity from such claims by their partial motion to dismiss. But, except as to Zatecky, we conclude that the motion should be and is therefore denied.

As we have explained in a recent case,

> A motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., tests the legal sufficiency of the complaint. *McReynolds v. Merrill Lynch & Co.*, Inc., 694 F.3d 873, 879 n.4 (7th Cir. 2012). We accept all well pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008). We do not accept legal conclusions as true. *Yeftich*, 722 F.3d at 915. We will grant the motion if, after striking all conclusory allegations, the factual content of the complaint fails to state a claim to relief that is "plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility where its factual allegations permit a reasonable inference of liability; speculative inferences of liability, or allegations merely consistent with liability, will not do. *Id.*

*Trahan v. Interactive Intelligence Grp.*, 308 F. Supp. 3d 977, 986 (S.D. Ind. 2018).

Under the ITCA, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). But suit may be brought against individual

16

employees if the complaint alleges torts that are "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." *Id.* § 5(c). As Defendants point out, the ITCA also requires that the complaint contain a "reasonable factual basis supporting the allegations[,]" *id.*, but the Federal Rules of Civil Procedure, not state statutes, set pleading standards in federal court, *see Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938), and in any event we cannot perceive a material difference on this score between the ITCA and *Iqbal*.

As already noted, Hall concedes that his attempt to impose vicarious liability on Zatecky fails. Br. Opp. (Dkt. 81) 1. Hall also seeks to hold Zatecky directly liable for his own negligence. *Id.* at 4–6. But the complaint fails to allege any factual basis for a plausible conclusion that he acted as egregiously as the ITCA requires. There is a conclusory allegation that Zatecky acted with "deliberate[] indifferen[ce]," Compl. ¶ 70, a constitutional standard akin to criminal recklessness, *see Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994), but the complaint fails to give factual support to that conclusion, most importantly by failing to suggest any subjective awareness of danger to Hall on Zatecky's part.

As to the remaining Defendants, however, the complaint sufficiently alleges torts falling outside the ITCA's individual-immunity provision. Hammond is alleged to have electrocuted a seizing epileptic who was handcuffed and strapped to a backboard. Stranger and Lunsford are alleged to have observed and done nothing. As the complaint is free of any self-defeating justifications for such conduct, these allegations are more

than sufficient to permit a plausible inference of malice, Ind. Code § 34-13-3-5(b)(3), or willfulness and wantonness. *Id.* § 5(b)(4). Further, Hammond is alleged to have lied to his superiors about Hall's preseizure drug use "[i]n an effort to hide his own misconduct[.]" Compl. ¶ 29. That is an express allegation that Hammond's conduct was "calculated to benefit [himself] personally." Ind. Code § 34-13-3-5(b)(5).

Because, with the exception of the claims against Zatecky, the complaint plausibly alleges torts outside the ITCA's individual-immunity provision, Defendants' motion to dismiss them with prejudice is denied.

## **Conclusion and Order**

For the reasons given above:

The motion for summary judgment is GRANTED.

The partial motion to dismiss is GRANTED IN PART and DENIED IN PART.

The state-law claims against Zatecky are DISMISSED WITH PREJUDICE.

All other claims are DISMISSED WITHOUT PREJUDICE.

Final judgment will enter by separate document. Fed. R. Civ. P. 58(a).

Date: 3/6/2019

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jeffrey R. Cardella
LAW OFFICE OF JEFF CARDELLA LLC
jeffcardella@cardellalawoffice.com

Benjamin C. Ellis
INDIANA ATTORNEY GENERAL
Benjamin.Ellis@atg.in.gov

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov